**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
ALEXANDER H. COTE (State Bar No. 211558)
acote@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

Attorneys for Plaintiff KERR CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

KERR CORPORATION,

Plaintiff,

v.

TRI DENTAL INC.; AHN LUU; and DOES 1-10

Defendants.

CASE NO. SACV12-00891 DOC (CWx)

Assigned to Hon. David O. Carter, Courtroom 9D

**PLAINTIFF KERR CORPORATION'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*[Filed Concurrently with: Declarations of Alexander H. Cote, Margaret E. Dayton, Tyrone Nguyen, Daniel Khalili and David Charnowitz In Support Thereof; and [Proposed] Default Judgment]*

**Date:** **March 11, 2013**
**Time:** **8:30 a.m.**
**Courtroom:** **9D**

Action Filed: June 5, 2012
Trial Date: None Set

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

1.      PLEASE TAKE NOTICE that on March 11, 2013, at 8:30 a.m., or as soon thereafter as this matter may be heard, in Courtroom 9D of the above-entitled Court, located at 411 West Fourth Street, Santa Ana, CA 92701-4516, Plaintiff Kerr Corporation ("Kerr") will move this Court for entry of default judgment by the Court against Defendants Ahn Luu ("Luu") and Tri Dental Inc. ("TDI") (collectively, "Defendants").  Upon Kerr's requests, the clerk entered default against Luu on August 23, 2012 and against TDI on August 30, 2012.  (Doc. Nos. 29, 31, 32, 33.)

At the time and place of hearing of the instant motion, Plaintiff will present proof of the following matters:

1.      That neither Luu nor TDI are an infant or incompetent person or in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940, (Dayton Decl. ¶¶ 2-4);

2.      That neither Luu nor TDI has appeared in this action, (Dayton Decl. ¶ 9);

3.      That notice of this motion has been served on Defendants at their last known address, as required by Fed. R. Civ. P. 55(b)(2)(C) and Local Rule 55-2, as evidenced by the Proof of Service filed concurrently herewith;

4.      That Plaintiff is entitled to judgment against Defendants on account of the claims pleaded in the First Amended Complaint: (1) federal trademark counterfeiting; (2) federal trademark infringement; (3) violation of federal unfair competition law; (4) violation of California Unfair Competition Law; (5) common-law unfair competition; and (6) trademark dilution and injury to reputation, (Dayton Decl. ¶ 15; Memorandum of Points and Authorities in Support of Plaintiff Kerr Corporation's Motion for Entry of Default Judgment by the Court);

5.      That Plaintiff is entitled to monetary compensation of $24,108,915.00 in the form of Defendants' trebled revenues, (Dayton Decl. ¶¶ 16-25);

6. That Plaintiff is entitled to attorneys' fees of $485,778.30 pursuant to 15 U.S.C. § 1117(b) and Civil Local Rule 55-3. In the alternative, Plaintiff is entitled to $25,460.00 in attorneys' fees, which it has incurred in this matter. (*See* Cote Decl. ¶¶ 2, 7-10, Ex. F); and

7. That Plaintiff is entitled to a permanent injunction against Defendants in the form filed herewith. (*See* Memorandum of Points and Authorities in Support of Plaintiff Kerr Corporation's Motion for Entry of Default Judgment by the Court, Section IV.C., *infra*; [Proposed] Default Judgment).)

The Motion is based on this Notice, the attached Memorandum of Points and Authorities, the Declarations of Alexander H. Cote, Margaret E. Dayton, Tyrone Nguyen, Daniel Khalili, and David Charnowitz filed concurrently herewith, and the pleadings, files, and other matters that may be presented at the hearing on said motion.

DATED: February 4, 2013

SCHEPER KIM & HARRIS LLP
MARC S. HARRIS
ALEXANDER H. COTE

By: /S/ Alexander H. Cote
Alexander H. Cote
Attorneys for Plaintiff KERR CORPORATION

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES....1

I. INTRODUCTION....1

II. KERR HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR DEFAULT....2

III. DEFAULT JUDGMENT SHOULD BE ENTERED....3

A. Kerr has Established the Merits of its Claims and the Sufficiency of the Complaint....3

1. Counts One Through Three: Federal Trademark Counterfeiting and Infringement (15 U.S.C. § 1114) and Federal Unfair Competition Law (15 U.S.C. § 1125)....4

2. Count Four: Violation of California Unfair Competition and Count Six: Trademark Dilution and Injury to Business Reputation (Cal. Bus. & Prof. Code §§ 14247, 14252)....6

3. Count Five: Common-Law Unfair Competition....6

B. The Sum of Money at Stake in the Action....7

C. The Possibility of Prejudice to the Plaintiff....7

D. The Possibility of a Dispute Concerning Material Facts....7

E. Whether the Default Was Due To Excusable Neglect....8

F. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits....8

IV. THE REMEDIES REQUESTED ARE APPROPRIATE....8

A. Kerr Is Entitled to Defendants' Trebled Profits....9

B. Kerr Is Entitled to Statutory Damages for Defendants' Conduct....11

C. A Permanent Injunction Should Be Entered....13

D. Kerr is Entitled to Reasonable Attorneys Fees....17

E. Kerr is Entitled Costs....18

V. CONCLUSION....18

# TABLE OF AUTHORITIES

**Pages**

## Federal Cases

BMW of N. Am. v. Dinodirect Corp., No. C 11-04598, 2012 U.S. Dist. LEXIS 89271, (N.D. Cal. June 27, 2012) ....15

Cartier v. Symbolix Inc., 544 F. Supp. 2d 316 (S.D.N.Y. 2008) ....11

Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175 (9th Cir. 1988) ....13

Chanel, Inc. v. Doan, 2007 U.S. Dist. LEXIS 2269 ....6, 17

Chanel, Inc. v. Tshimanga, No. C-07-3592 EMC, 2008 U.S. Dist. LEXIS 118783, (N.D. Cal. July 15, 2008) .... 11

Chanel, Inc. v. US880, No. C 10-02601 PJH, 2011 U.S. Dist. LEXIS 82632, (N.D. Cal. July 5, 2011) ....4, 8, 13

Cosmos Jewelry Ltd. v. Po Sun Hon Co., 470 F. Supp. 2d 1072 (C.D. Cal. 2007) ....10

Danning v. Lavine, 572 F.2d 1386 (9th Cir. 1978) .... 4

Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696 (9th Cir. 2008) ....17

Draper v. Coombs, 792 F.2d 915 (9th Cir. 1986) .... 3

Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210 (9th Cir. 2003) ....12

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391-92 (2006) ....13

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986) .... 3

Fendi Adele S.R.L. v. Filenes' Basement, Inc., 696 F. Supp. 2d 368 (S.D.N.Y 2010) .... 6

Idaho Potato Comm'n v. G&T Terminal Packaging, Inc., 425 F.3d 708 (9th Cir. 2005) ....10

Ill. Tool Works Inc. v. Hybrid Conversions, Inc.,
817 F. Supp. 2d 1351 (N.D. Ga. 2011)....12

Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.,
4 F.3d 819 (9th Cir. 1993).... 5

IO Grp., Inc. v. Jordon,
708 F. Supp. 2d 989 (N.D. Cal. 2010)....7, 8, 9

Junker v. HDC Corp.,
No. C-07-05094 JCS, 2008 U.S. Dist. LEXIS 111104,
(N.D. Cal. Jul. 28, 2008).... 8

K & N Eng'g, Inc. v. Bulat,
510 F.3d 1079 (9th Cir. 2007)....18

Louis Vuitton Malletier S.A. v. LY USA, Inc.,
676 F.3d 83 (2d Cir. 2012)....18

Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,
571 F.3d 873 (9th Cir. 2009)....15

Official Airline Guides, Inc. v. Goss,
6 F.3d 1385 (9th Cir. 1993)....12

Panavision Int'l v. Toeppen,
141 F.3d 1316 (9th Cir. 1998).... 6

Peer Int'l Corp. v. Pausa Records, Inc.,
909 F.2d 1332 (9th Cir. 1990)....11, 12

Pepsico, Inc. v. Cal. Security Cans,
238 F. Supp. 2d 1172 (C.D. Cal. 2002)....passim

Philip Morris USA Inc. v. Liu,
489 F. Supp. 2d 1119 (C.D. Cal. 2007)....4, 6

Philip Morris USA, Inc. v. Castworld Prods., Inc.,
219 F.R.D. 494 (C.D. Cal. 2003)....passim

Philip Morris USA, Inc. v. Lee,
547 F. Supp. 2d 667 (W.D. Tex. 2008)....4, 11, 12

Phillip Morris USA Inc. v. Shalabi,
352 F. Supp. 2d 1067 (C.D. Cal. 2004).... 6

Rio Props., Inc. v. Rio Int'l Interlink,
284 F.3d 1007 (9th Cir. 2002)....18

Sennheiser Electronic Corp. v. Bielski,
No. CV11-07892-ODW (FFMx), 2012 U.S. Dist. LEXIS 77985,
(C.D. Cal. June 4, 2012).... 15

Super-Krete Int'l, Inc. v. Sadleir,
712 F. Supp. 2d 1023 (C.D. Cal. 2010)....14

TeleVideo Sys, Inc. v. Heidenthal,
826 F.2d 915 (9th Cir. 1987) .......... 4

U.S. Olympic Comm. Exclusive Leisure & Hospitality Ltd.,
89 U.S.P.Q.2d 2011 (N.D. Cal. 2009) .......... 14

Vallavista Corp. v. Vera Bradley Designs, Inc.,
No. C 10-00120 JW, 2011 U.S. Dist. LEXIS 154105,
(N.D. Cal. April 20, 2011) .......... 7,17

Wetzel's Pretzels, LLC v. Johnson,
797 F. Supp. 2d 1020 (C.D. Cal. 2011) .......... 14

**Federal Statutes**

15 U.S.C. § 1057(b) .......... 4

15 U.S.C. § 1114 .......... 4

15 U.S.C. § 1114(1)(a) .......... 4

15 U.S.C. § 1115 .......... 4

15 U.S.C. § 1116 .......... 13

15 U.S.C. § 1116(a) .......... 13

15 U.S.C. § 1117 .......... 18

15 U.S.C. § 1117(a) .......... 9, 10, 17

15 U.S.C. § 1117(b) .......... passim

15 U.S.C. § 1117(c) .......... 11, 17, 18

15 U.S.C. § 1117(c)(2) .......... 11

15 U.S.C. § 1118 .......... 15, 17

15 U.S.C. § 1125 .......... 4, 15

15 U.S.C. § 1125(a) .......... 4

28 U.S.C. § 1920 .......... 18, 19

**State Statutes**

Cal. Bus. & Prof. Code § 14247 .......... 6

Cal. Bus. & Prof. Code § 14252 .......... 6

Cal. Bus. & Prof. Code § 14330 .......... 6

Cal. Bus. & Prof. Code § 14335 ........ 6
Cal. Bus. & Prof. Code § 14340 ........ 6
Cal. Bus. & Prof. Code § 17200 ........ 6

**Federal Rules**

Fed. R. Civ. Proc. 54(c) ........ 2, 3
Fed. R. Civ. P. 55(a) ........ 2
Fed. R. Civ. P. 55(b) ........ 2, 8
Fed. R. Civ. P. 55(b)(2)(C) ........ 1
Local Rule 55-1 ........ 2

v

PLAINTIFF KERR CORPORATION'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

For decades, Kerr Corporation ("Kerr") has manufactured and sold dental composites and cements bearing a number of its trademarks. After receiving complaints from dentists concerning the performance and quality of certain products, Kerr learned that the nonperforming products were counterfeit – that is, the products were not manufactured by Kerr, but bore spurious copies of Kerr's protected trademarks. Through litigation with (among others) DC Dental Supply, LLC ("DCD"),[1] a counterfeit reseller, and through its own investigative efforts, Kerr identified the source of counterfeit products: Defendant Ahn Luu, *a former Kerr employee*, and the company he founded, Defendant Tri Dental Inc. ("TDI", collectively "Defendants").

Discovery obtained in the DCD Suit and Kerr's own investigation revealed a counterfeiting scheme of astronomical proportions. Invoices produced by DCD (the "Invoices") show that DCD purchased over ***$8 million*** in counterfeit products – over ***300,000*** units of 156 products – from TDI. Unfortunately, those figures are likely only the tip of the iceberg: they represent sales to just two of TDI's customers – DCD and an affiliate – that Kerr managed to locate. Kerr's independent investigation also revealed that TDI contracted with Print 5K, a local printer in Fountain Valley, to print hundreds of thousands of unauthorized copies of the instruction booklets (called "Directions for Use" or "DFUs") included in the packaging for Kerr's dental products. Kerr never authorized TDI to print the DFUs, and therefore Defendants could have but one reason for ordering them: to support a massive counterfeit operation distributing millions of dollars of counterfeit product

---

[1] *See generally*, *Kerr Corp. v. North American Dental Wholesalers, Inc., North American Dental, Inc. and DC Dental Supply, Inc.*, Case No. SACV11-00313 DOC (CWx), consolidated with SACV11-01300 (C.D. Cal.) ("DCD Suit").

each month.

Accordingly, Kerr filed this lawsuit against Defendants to put a stop to their counterfeiting, to protect Kerr's trademarks and the public at large, to compensate Kerr for its injuries, and to punish Defendants for their willful infringement and endangering the public. Despite proper service, Defendants have never appeared or responded. Therefore, Kerr's only recourse against Defendants is an entry of default judgment by the Court.

## II. KERR HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR DEFAULT

Pursuant to Federal Rule of Civil Procedure 55(b), a court may enter default judgment following the entry of default by the Clerk of the Court. *Pepsico, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). In the Central District of California, motions for default judgment must set forth the following information: (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. Local Rule 55-1; *Pepsico*, 238 F. Supp. 2d at 1174.

Kerr has satisfied the procedural requirements for entry of default judgment under Federal Rule of Civil Procedure 55(a) and Local Rule 55-1. The Clerk properly entered default against Defendants Luu and TDI after they failed to respond to the First Amended Complaint within the time allowed. (Doc. Nos. 31, 33.) Furthermore, Defendants are neither infants nor incompetent persons, are not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940, and Kerr has served this Notice of Motion, Motion, and supporting documents on Defendants. (Dayton Decl. ¶¶ 2-4, 12-13.) Finally, this Motion complies with Federal Rule of Civil Procedure 54(c) in that it requests a remedy that is not

different in kind from that prayed for in the First Amended Complaint ("FAC"). *See* Fed. R. Civ. Proc. 54(c). Therefore, this Court may order a default judgment against Defendants based on the *Eitel* factors, outlined below.[2]

**III. DEFAULT JUDGMENT SHOULD BE ENTERED**

When the procedural requirements for a default judgment are satisfied, the decision to grant or to deny a request for default judgment lies within the Court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). When exercising this discretion, the following "*Eitel* factors" guide the Court:

> (1) the merits of the plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) the sum of money at stake in the action; (4) the possibility of prejudice to the plaintiff; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Despite this discretionary standard, "default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citation omitted). As discussed below, here the discretionary factors favor entering default judgment against Defendants.

**A. Kerr has Established the Merits of its Claims and the Sufficiency of the Complaint**

"Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to

[2] Although default was entered against Luu on August 23, 2012 and against TDI. On August 30, 2012, (Doc. Nos. 29, 31, 32, 33), Kerr has been diligently prosecuting this case. Kerr could not move for default judgment earlier because it was awaiting the Declaration of David Charnowitz, which authenticates the Invoices. (*See* Doc. No. 34.)

the amount of damages." *TeleVideo Sys, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Therefore, the two *Eitel* factors regarding the substantive claims and sufficiency of the evidence "essentially require Plaintiff['s complaint] to state a claim on which it may recover." *Chanel, Inc. v. US880*, No. C 10-02601 PJH, 2011 U.S. Dist. LEXIS 82632, at *23 (N.D. Cal. July 5, 2011) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)). The well-pled factual allegations of Kerr's FAC properly allege the elements of and support liability for each claim, as shown below.

***1. Counts One Through Three: Federal Trademark Counterfeiting and Infringement (15 U.S.C. § 1114) and Federal Unfair Competition Law (15 U.S.C. § 1125)***

"Although [Sections 32 and 43(a) of the Lanham Act] are distinct claims, the elements are essentially identical and the same evidence establishes both claims." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1121-22 (C.D. Cal. 2007) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999)). "Liability is established under both Section 32 and Section 43(a) if the plaintiff demonstrates (1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake." *Id.* at 1122; *see also* 15 U.S.C. § 1114(1)(a), 15 U.S.C. § 1125(a).

These elements are satisfied here. *First*, under 15 U.S.C. §§ 1057(b), 1115, Kerr owns valid and protectable trademark rights, as evidenced by its registration of the following marks: KERR, UNIDOSE, OPTIBOND FL, OPTIBOND, PRODIGY, NEXUS, and REVOLUTION (the "Registered Marks"). (FAC ¶ 21; Cote Decl., Exs. G-O (registration records of the Registered Marks).) "[R]egistration of a trademark with the United States Patent and Trademark Office satisfies 'the threshold requirement that the plaintiff must possess a protectable mark.'" *See Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 667, 674-75 (W.D. Tex. 2008).

With respect to the HERCULITE, PREMISE, NX3, and MAXCEM ELITE marks (the "Unregistered Marks"),[3] Kerr has established ownership if each mark "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [plaintiff's] products by members of the consuming public." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993). The FAC adequately pleads each of these elements for each of the Registered and Unregistered Marks (the "Marks"). (FAC ¶¶ 10-20, 23-24, 35, 40-41, 45, 47, 51.)

*Second*, Defendants used the Marks in commerce in a manner likely to cause consumer confusion, deception, or mistake and without Kerr's authorization. (FAC ¶¶ 25-28; Dayton Decl, Ex. B.) Defendants undoubtedly used the Marks in commerce. Defendants sold over 300,000 infringing units bearing the Marks – and generated over $8 million in revenues. (*See* Dayton Decl. ¶¶ 16-24, Ex. B; Charnowitz Decl, Ex. A.)[4] Defendants also printed the Marks on the invoices for those sales. (*See id.*) Moreover, Defendants hired a printer to print hundreds of thousands of packaging inserts containing directions for use ("DFUs") of Kerr's products, each bearing one or more Mark. (Nguyen Decl. ¶¶ 60-61, Exs. G-K.)[5] Defendants' use of the Marks is likely to cause confusion because counterfeit marks are inherently confusing. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d

---

[3] Kerr subsequently registered the Herculite Mark on August 28, 2012; however, for the purposes of this Motion it is categorized as an "Unregistered Mark" because it was not registered during the time relevant to the FAC. (*See* Cote Decl., Ex. P.)

[4] Exhibit C from the Charnowitz Declaration has not been filed with the Court because it is not relevant to this Motion. Kerr will provide Exhibit C to the Charnowitz Declaration upon the Court's request.

[5] Kerr has provided the first two pages and the last two pages of Exhibits C, H, and J to the Nguyen Declaration due to their size. Kerr will provide full copies of Exhibits C, H, and J upon the Court's request.

1067, 1073 (C.D. Cal. 2004); *see also Fendi Adele S.R.L. v. Filenes' Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y 2010).

***2. Count Four: Violation of California Unfair Competition and Count Six: Trademark Dilution and Injury to Business Reputation (Cal. Bus. & Prof. Code §§ 14247, 14252)***

Kerr's state law claims are subject to the same analysis as the federal Lanham Act claims. *Philip Morris USA, Inc. v. Liu*, 489 F. Supp. 2d at 1123 ("Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law"); *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998). Because Kerr has established Defendants' liability under the Lanham Act, it has also established Defendants' liability under Cal. Bus. & Prof. Code §§ 17200 and 14247. (*See*, Section III.A.1., *supra*); *see also Chanel, Inc. v. Doan*, 2007 U.S. Dist. LEXIS 22691, at *8-9 (granting default judgment because the factual allegations of plaintiff's complaint established violations of the Lanham Act and Cal. Bus. & Prof. Code §§ 14330,[6] 14335, 14340, and 17200 *et seq*.).

***3. Count Five: Common-Law Unfair Competition***

"To prevail on its common law unfair competition claim, Plaintiff must prove that Defendant tried to pass off false goods as those of Plaintiff, or as somehow related or associated with, or sponsored or endorsed by Plaintiff." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 500 (citing *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1263 (1992)). As discussed above, Defendants manufactured and sold dental supplies and materials bearing counterfeits of the Marks and directed a printer to reproduce counterfeit DFUs. (FAC ¶¶ 25-29; Nguyen Decl. ¶¶ 21-31, 60-61.) These allegations establish Kerr's common-law unfair competition claim. *See Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219

[6] Cal. Bus. & Prof. Code § 14247 was formerly § 14330. Cal. Bus. & Prof. Code § 14247, Historical Derivation.

F.R.D. at 500 (citation omitted).

**B. <u>The Sum of Money at Stake in the Action</u>**

When evaluating the sum of money at stake in the action, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Id.* (citations omitted). Defendants' $8 million in sales of *counterfeit* products justifies a substantial monetary award. (*See* Section IV.A., B. *infra*.) However, even when a large amount is at stake, this factor does not weigh against entering default judgment because the Court may, in its discretion, limit the damages award. *See IO Grp., Inc. v. Jordon*, 708 F. Supp. 2d 989, 999 (N.D. Cal. 2010); *see also Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 500 (granting default judgment when $2,000,000 in statutory damages was at stake based on defendant's large-scale counterfeiting operation and failure to participate in the litigation).

**C. <u>The Possibility of Prejudice to the Plaintiff</u>**

In this case, Kerr would suffer prejudice if default judgment was not entered because Kerr would have no recourse against Defendants. *See Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 499; *Pepsico*, 238 F. Supp. 2d at 1176. Furthermore, Kerr will suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered. *See Phillip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 499.

**D. <u>The Possibility of a Dispute Concerning Material Facts</u>**

Because the allegations of the Complaint concerning liability are taken as true upon entry of default, there is no possibility of a dispute concerning material facts. *Vallavista Corp. v. Vera Bradley Designs, Inc.*, No. C 10-00120 JW, 2011 U.S. Dist. LEXIS 154105, at *7 (N.D. Cal. April 20, 2011). Here, a dispute concerning material facts is even more remote because the FAC's allegations are corroborated by third-party evidence, the Nguyen Declaration. Therefore, this factor also favors granting default judgment for Kerr. *Id.* at *8.

**E. Whether the Default Was Due To Excusable Neglect**

There is no indication that Defendants' failure to appear was the result of excusable neglect. Although Defendants were properly served, they have made no attempt to respond to Kerr's allegations. (*See* Dayton Decl. ¶¶ 6-9.) Absent any evidence of excusable neglect, this factor weights in favor of granting a default judgment. *See Chanel v. US880*, 2011 U.S. Dist. LEXIS 82632, at *27-28; *Junker v. HDC Corp.*, No. C-07-05094 JCS, 2008 U.S. Dist. LEXIS 111104, at *6-7 (N.D. Cal. Jul. 28, 2008).

**F. The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits**

Although, "[c]ases should be decided upon their merits whenever reasonably possible . . . the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *Pepsico*, 238 F. Supp. 2d at 1177 (internal quotation marks and citations omitted). Moreover, Defendants' failure to answer Kerr's Complaint makes a decision on the merits impractical, if not impossible. *See Philip Morris v. Castworld Prods., Inc.*, 219 F.R.D. at 501; *IO Grp., Inc.*, 708 F. Supp. 2d at 1000. Therefore, this factor does not preclude the Court from granting default judgment. *See id.*

**IV. THE REMEDIES REQUESTED ARE APPROPRIATE**

Here, a large damages award is both appropriate and necessary to put a stop to Defendants' counterfeiting, to protect Kerr's trademarks and the public at large, to compensate Kerr for its injuries, and to punish Defendants. For decades, Kerr has manufactured industry-leading, high value dental composites and cements. Capitalizing on Kerr's good will and valuable intellectual property, Kerr's former employee, Luu knowingly and willfully manufactured and sold over ***300,000*** units of 156 counterfeit products and profited over ***$8 million*** – and these are just the units that Kerr has been able to discover. In reality, Kerr does not know and may never know just how profitable and widespread Defendants' counterfeiting scheme

truly is. Furthermore, Defendants' counterfeit products pose a public health risk, as Kerr's products comply with and are regulated by the FDA, while Defendants' counterfeit products presumably do not and are not. (*See* Khalili Decl. ¶ 4.)

**A. Kerr Is Entitled to Defendants' Trebled Profits**

As alleged in the FAC and discussed above, Kerr has established Defendants' intentional and knowing violations of the Lanham Act. (*See* Section III.A., *supra*.) Under 15 U.S.C. § 1117(a), a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*

In connection with the settlement of the DCD suit, Kerr received copies of the Invoices, which reflect DCD's and Kings Two Dental Supply's ("King") purchase of the counterfeit products from Defendants. (*See* Charnowitz Decl. ¶¶ 3-6, Ex. A.) From the Invoices, Kerr had a Summary Chart prepared, which is attached as Exhibit B to the Dayton Declaration. (Dayton Decl. ¶ 18, Ex. B.) Every line on the Summary Chart represents an individual sale of product containing a counterfeit of the KERR Mark.[7] (*Id.* ¶ 20; Khalili Decl. ¶ 2.) Pulled directly from the Invoices, each entry includes: the invoice number, the invoice date, the product code, the product description, the quantity purchased, and the price charged by TDI. (Dayton Decl. ¶ 20, Ex. B, "Invoice Number," "Date," "Product Code," "Product Description," "Quantity," and "TDI Price" columns.) From this data, Kerr's attorney multiplied the quantity of product sold times the price charged by TDI as reflected on the Invoices to generate TDI's total for each sale. (*Id.* at ¶ 22.) To

[7] As reflected on the Summary Chart and the Invoices, the counterfeit products sold by Defendants also contained other, product-specific Marks. (*See* Dayton Decl., Ex. B; Khalili Decl. ¶ 2; Charnowitz Decl. Ex. A.) However, because each product bore a counterfeit of the KERR Mark, for simplicity's sake all sales are being considered together as infringing on the KERR Mark.

calculate TDI's total revenue for sales to DCD and Kings, Kerr's attorney summed the "TDI Sales" column for all of the entries. (*Id.* at ¶ 23.) Based on these calculations, TDI's total revenue for sales of Kerr products to DCD and Kings equals ***$8,036,305.00***. (*Id.*; *id.*, Ex. B, "TDI Sales" column.) Because Defendants have presented no evidence of costs or deductions, Kerr is entitled to an accounting of the full amount of TDI's gross revenues. *See* 15 U.S.C. § 1117(a); *see also Cosmos Jewelry Ltd. v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072, 1088 (C.D. Cal. 2007) (ordering accounting of entirety of defendants' gross revenues in light of failure to offer proof of deductions), *aff'd without op.*, No. 06-56338 (9th Cir. Mar. 24, 2009).

Once calculated, monetary relief under 15 U.S.C. § 1117(a) "*shall*, unless the court finds extenuating circumstances," be trebled when (1) the defendant intentionally used a counterfeit mark in commerce;[8] (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to cause confusion or deceive. 15 U.S.C. § 1117(b) (emphasis added); *see also Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

As discussed above, 15 U.S.C. § 1117(b) mandates the trebling of monetary relief because Defendants intentionally used counterfeit Marks in connection with the sale, offering for sale, or distribution of goods in a way that was likely to cause consumer confusion and because Defendants have failed to carry their burden of

---

[8] In this context, a mark is counterfeit if: (1) it was a non-genuine mark identical to the plaintiff's mark; (2) the plaintiff's mark was registered on the Principal Register for use on the same goods to which the defendant applies the mark; (3) the plaintiff's mark was in use; and (4) the defendant was not authorized to use the plaintiff's mark on the goods. *Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005) (citing 15 U.S.C. §§ 1116(d)(1)(B), 1127). As discussed above, these elements are established here. (*See* Section III.A., *supra*.)

demonstrating extenuating circumstances. (*See* Section III.A., *supra.*) Accordingly, Kerr is entitled to ***$24,108,915.00***, which is three times Defendants' known revenues. (Dayton Decl. ¶¶ 23, 25.)

**B. <u>Kerr Is Entitled to Statutory Damages for Defendants' Conduct</u>**

As an alternative measure of monetary relief, Kerr seeks an award of statutory damages under 15 U.S.C. § 1117(c). In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000 and not more than $200,000 per counterfeit mark per type of goods. 15 U.S.C. § 1117(c). In addition, if the court finds a defendant's counterfeiting actions were willful, it may impose statutory damages up to $2,000,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(2). "Statutory damages are designed to compensate the trademark owner for its losses and discourage wrongful conduct." *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 667, 679 (S.D. Tex. 2008).

In determining an award of statutory damages, courts commonly use the factors developed for copyright law, including: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the intellectual property; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *See, e.g., Chanel, Inc. v. Tshimanga*, No. C-07-3592 EMC, 2008 U.S. Dist. LEXIS 118783, at *33-34 (N.D. Cal. July 15, 2008) (citing *Cartier v. Symbolix Inc.*, 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008)). The Court has wide discretion to set an amount of statutory damages within the statutory limits. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (citation omitted). "[W]hen an alleged infringer knowingly adopts a Mark similar to another's, courts will presume an

intent to deceive the public," *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993), and a defendant's intent can establish willfulness, triggering an enhanced statutory award. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17 (9th Cir. 2003).

Here, the statutory maximum should be imposed. As discussed above, Defendants knowingly and willfully counterfeited Kerr's Marks with an intent to trade on Kerr's industry-leading technology and valuable good will. (FAC ¶¶ 4, 37; *see* Section III.A., *supra*.) Defendants' use was necessarily knowing, as Luu is a former executive of Kerr and the company he founded, TDI, manufactured the counterfeit products. (FAC ¶¶ 7, 25.) Furthermore, the counterfeit products bore multiple counterfeit Marks, namely, the KERR Mark and other product-specific Marks. (*See* Khalili Decl. ¶ 2.) Moreover, Defendants have not appeared or responded to the FAC or provided any information to Kerr. (Dayton Decl. ¶¶ 9, 14.) Finally, Defendants' illegal conduct resulted in over $8 million in revenue based only on the two purchasers Kerr was able to discover, (*see* Dayton Decl., Ex. B), and the counterfeit products present a public health risk. (*See* Khalili Decl. ¶ 4.) In light of these facts, the statutory maximum award is appropriate to compensate Kerr and to punish the willfully-infringing Defendants. *See Ill. Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1356 (N.D. Ga. 2011) (finding that threat to public safety posed by defendants' counterfeiting justified a "large statutory damages amount"); *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 501-502 (awarding the statutory maximum for willful and knowing infringement and noting the award was far less than plaintiff's actual trebled damages); *Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d at 680 (awarding maximum statutory damages for willful trademark infringement); *see also Peer Int'l Corp.*, 909 F.2d at 1336-37 (affirming maximum statutory damages award for willful copyright infringement). Accordingly, Kerr should receive statutory damages of ***$14 million***, $2 million per infringed Registered Mark. (*See* FAC ¶ 21; Dayton Decl., Ex. B;

Charnowitz Decl., Ex. A.)[9]

### C. A Permanent Injunction Should Be Entered

The Lanham Act authorizes a district court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Accordingly, injunctions may be granted in connection with a default judgment. *See, e.g.*, *PepsiCo.*, 238 F. Supp. 2d at 1177; *Chanel, Inc. v. US880*, 2011 U.S. Dist. LEXIS 82632, at *29-40. Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from infringing any of Kerr's trademarks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).

Defendants' actions warrant permanent injunctive relief. As discussed above,

---

[9] According to the Invoices, Defendants counterfeited at least seven of Kerr's Registered Marks on the following unique products: UNIDOSE (*see, e.g.*, Dayton Decl., Ex. B, row 319 (Product Code 32664, "Refill – Unidose Premise D3")); OPTIBOND FL (*see*, *e.g.*, *id.*, row 39 (Product Code 25881, "Optibond FL Prime")); OPTIBOND (*see, e.g.*, *id.*, row 666 (Product Code 29669, "Optibond Solo Plus, 100-PK")); PRODIGY (*see, e.g.*, *id.*, row 429 (Product Code 25899, "Refill – SYR Prodigy B2")); REVOLUTION (*see, e.g.*, *id.*, row 430 (Product Code 29493, "Kit – Revolution 2 A1")); NEXUS (*see, e.g.*, *id.*, row 644 (Product Code 33643, "Refill – NX3 Clear")) (the NEXUS Mark and the NX3 Mark appear on the same products (Khalili Decl. ¶ 3)); and KERR (*see, e.g.*, Dayton Decl., Ex. B, row 145 (Product Code 32858, "Maxcem White Refill")) (a counterfeit KERR Mark appeared on all of Defendants' counterfeit products (*see* Khalili Decl. ¶ 2)).

Defendants used marks identical to those owned by Kerr to advertise, promote and sell the same kinds of goods that Kerr sells. (*See* FAC ¶¶ 9-52; Section III.A., *supra*.) The net effect of Defendants' actions is a risk to public health and the confusion of consumers who will believe that Defendants' counterfeit goods are genuine goods originating from Kerr. *See Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1037 (C.D. Cal. 2010) (finding irreparable harm based in part on threat of diverted customers). This unlawful conduct has caused irreparable injury to Kerr's good will and reputation and will continue to do so if Defendants are not permanently enjoined. (*See* FAC ¶¶ 40-43.) *See Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011) (finding irreparable harm based in part on plaintiff's loss of control over its reputation); *U.S. Olympic Comm. Exclusive Leisure & Hospitality Ltd.*, 89 U.S.P.Q.2d 2011, at *23 (N.D. Cal. 2009) (entering injunctive relief "[I]t is reasonable for the court to assume that continuing infringement will leave the plaintiff with a loss of control over its reputation and a loss of goodwill"). Additionally, Defendants failure to respond or otherwise appear in this action makes it difficult for Kerr to prevent further infringement. *See PepsiCo.*, 238 F. Supp. 2d at 1178 (granting injunctive relief, in part because "in the absence of opposition by the non-appearing defendant, it cannot be said that it is 'absolutely clear' that Defendant's allegedly wrongful behavior has ceased and will not begin again"); *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 502 (where defendants chose to ignore the lawsuit, "[f]ailure to grant the injunction would needlessly expose Plaintiff to the risk of continuing irreparable harm.").

Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Kerr's trademarks, whereas Kerr faces hardship from loss of sales and its inability to control and harm to its reputation. (FAC ¶¶ 40-43.) Finally, the public has an interest in the issuance of a permanent injunction against Defendant in order to prevent a risk to public health. Kerr sells dental materials and dental instruments that are regulated by the FDA. Kerr takes

numerous steps and incurs great expense to ensure regulatory compliance and consumer safety. (Khalili Decl. ¶ 4.) By distributing dental materials and dental instruments that are falsely labeled with Kerr Marks, Defendants are presumably evading FDA oversight.

In light of foregoing, Kerr is entitled to an injunction prohibiting Defendants from further infringing on Kerr's products and requiring Defendants to recall all products it has distributed bearing or associated with the Marks and not manufactured under Kerr's authority. *See PepsiCo.*, 238 F. Supp. 2d at 1178 (granting injunctive relief prohibiting future infringement); *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 502 (same); *Sennheiser Electronic Corp. v. Bielski*, No. CV11-07892-ODW (FFMx), 2012 U.S. Dist. LEXIS 77985, at *11-12 (C.D. Cal. June 4, 2012) (granting default judgment and injunction ordering recall of infringing merchandise); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (considering the "substantial risk of danger to the public due to defendant's infringing activity" on motion for preliminary injunction).

Finally, because Kerr has established that Defendants violated 15 U.S.C. § 1125, Defendants should be ordered to deliver up for destruction all counterfeit goods that bear Kerr's Marks, or colorable imitations thereof, that are in Defendants' possession, custody, or control pursuant to 15 U.S.C. § 1118. 15 U.S.C. § 1118; *BMW of N. Am. v. Dinodirect Corp.*, No. C 11-04598, 2012 U.S. Dist. LEXIS 89271, at *27-28 (N.D. Cal. June 27, 2012). Defendants should also be ordered to deliver up for destruction any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession, custody, or control that bear Kerr's Marks or colorable imitations thereof. *Id.*

Therefore, Kerr respectfully requests that this Court order a permanent injunction that includes the following material terms:

(1) Defendant Ahn Luu and Defendant Tri Dental Inc. (collectively,

"Defendants") and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, are prohibited from:

(a) using any copy, reproduction, or colorable imitation or simulation of the KERR, HERCULITE, UNIDOSE, OPTIBOND, REVOLUTION, PRODIGY, OPTIBOND FL, NEXUS, PREMISE, NX3, MAXCEM ELITE, and/or HERCULITE XR trademarks, or any other marks owned by Kerr Corporation or its affiliated companies (collectively, "Marks") in connection with goods not manufactured under Plaintiff's authority;

(b) using any mark that is a copy, reproduction, colorable imitation, or simulation of or, confusingly similar to the Marks, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' products are products of Plaintiff, or are sponsored by or in any way related to Plaintiff; and

(c) passing off, palming off, or assisting in passing off or palming off Defendants' products as those of Plaintiff, or otherwise continuing any and all acts of unfair competition.

(2) In light of the public health risk, Defendants shall recall any products it has distributed bearing or associated with the Marks and not manufactured under Kerr's authority; and

(3) Defendants shall deliver up for destruction all counterfeit goods and any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements that bear Kerr's marks or colorable imitation thereof,

pursuant to 15 U.S.C. § 1118.

**D. Kerr is Entitled to Reasonable Attorneys Fees**

Kerr is also entitled to reasonable attorneys fees under 15 U.S.C. § 1117(b). Section 1117(b) provides that when a defendant "intentionally us[es] a mark or designation, knowing that such mark or designation is a counterfeit mark . . ." the court shall award reasonable attorney's fees. 15 U.S.C. § 1117(b); *Chanel, Inc. v. Doan*, 2007 U.S. Dist. LEXIS at *16-18. As discussed above, 15 U.S.C. § 1117(b) applies to Defendants' intentional and willful counterfeiting of the KERR Mark, (*see* Section IV.A., *supra*), which has been established by Defendants' default.

Kerr requests $485,778.30 in attorneys fees pursuant to this Court's default judgment fee schedule. *See* Civil Local Rule 55-3. For a damage award over $100,000, the fee schedule provides for an award of attorneys fees equal to $5600 plus 2% of the amount of the damages over $100,000. *See id.* Based on this formula, for a damage award of $24,108,915.00, the attorneys fees are $485,778.30. *See id.*; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 502 (awarding $43,600 in fees based on a $2 million damage award and the court's fee schedule). In the alternative, Kerr requests $25,460.00 in attorneys fees, which represents the amount of attorneys fees Kerr has incurred to date in prosecuting this action. (*See* Cote Decl. ¶¶ 2, 7-10, Ex. F.)

Similarly, if the Court awards statutory damages under 15 U.S.C. § 1117(c), attorneys fees are warranted under 15 U.S.C. § 1117(a) because "[i]f a complaint alleges that a defendant willfully infringed a plaintiff's trademarks, and default judgment is entered with respect to that complaint, then attorney fees should be awarded under the Lanham Act." *Vallavista*, 2011 U.S. Dist. LEXIS 154105, at *11, 14; *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (affirming award of fees in non-counterfeiting case on ground that "[t]he district court entered [a] default and [the defendant] concedes that its default occurred with respect to a complaint that pled willfulness"); *accord Rio Props., Inc.*

*v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).[10]

**E. Kerr is Entitled Costs**

2. As the prevailing party, Kerr is entitled to its costs pursuant to 28 U.S.C. § 1920 and Civil Local Rule 54-1. Kerr's total costs in this action are $1252.50, which include $350.00 in costs for filing this action, $165.00 in connection with the filing of the FAC, $142.00 in connection with service of the FAC, and $595.50 in connection with the creation of Exhibit B to the Dayton Declaration. (Dayton Decl. ¶ 28, Ex. Q.)

## V. CONCLUSION

For the foregoing reasons, Kerr respectfully requests that the Court:

(1) Enter Final Default Judgment finding Defendants liable on all counts in the FAC;

(2) Award Kerr **$24,108,915.00** in damages against Defendants pursuant to 15 U.S.C. § 1117(b) (or in the alternative, **$14,000,000** in statutory damages pursuant to 15 U.S.C. § 1117(c));

(3) Enter a permanent injunction against Defendants in the form filed concurrently herewith;

(4) Award Kerr **$485,778.30** in attorneys' fees, pursuant to 15 U.S.C. § 1117(b) and Civil Local Rule 55-3;

---

[10] The Ninth Circuit has held that a plaintiff electing to obtain statutory damages under 15 U.S.C. § 1117(c) is not automatically entitled to fees in addition to a statutory award. *See K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1082 (9th Cir. 2007). In *K & N*, the court "d[id] not reach the issue whether an election to receive statutory damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the final sentence of § 1117(a)." *Id.* at 1082 n.5. Recently, the Second Circuit analyzed the text and legislative history of 15 U.S.C. § 1117 and concluded "that an award of attorney's fees is available under section 1117(a) in 'exceptional' cases even for those plaintiffs who opt to receive statutory damages under section 1117(c)." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108-111 (2d Cir. 2012).

(5) Tax **$1,252.50** in Kerr's costs against Defendants pursuant to 28 U.S.C. § 1920 and Civil Local Rule 54-1; and

(6) Award any other and further relief as the Court may deem just and proper.

DATED: February 4, 2013

Respectfully submitted,
SCHEPER KIM & HARRIS LLP
MARC S. HARRIS
ALEXANDER H. COTE

By: /S/ Alexander H. Cote
Alexander H. Cote
Attorneys for Plaintiff KERR CORPORATION

19

PLAINTIFF KERR CORPORATION'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT BY COURT