O

UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | | |
|---|---|---|
| KERR CORPORATION, | ) | CASE NO. SACV 12-0891 DOC (CWx) |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **O R D E R** GRANTING PLAINTIFF'S |
| **v.** | ) | MOTION FOR DEFAULT |
| | ) | JUDGMENT |
| TRI DENTAL, INC., a California | ) | |
| corporation, AHN LUU, an individual, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Before the Court is a Motion for Default Judgment (Dkt. 36) filed by Plaintiff Kerr Corporation ("Plaintiff"), unopposed by Defendants Tri Dental, Inc., and Ahn Luu ("Defendants"). A hearing was held on this matter on March 11, 2013.  After considering the moving papers and oral argument, the Court GRANTS Plaintiff's Motion.

I.     **Background**

Plaintiff Kerr Corporation is a manufacturer of "high technology dental restorative materials and consumables," and individual defendant Ahn Luu is a former executive of Kerr Corporation who founded corporate defendant Tri Dental, Inc.   First Am. Compl. (FAC) (Dkt. 19) at 2.  Plaintiff brought six claims against Defendants: 1) federal trademark counterfeiting in

violation of 15 U.S.C. § 1116; 2) federal trademark infringement in violation of 15 U.S.C. § 1114; 3) federal unfair competition in violation of 15 U.S.C. 1125; 4) unfair competition in violation of California Business and Professions Code § 17200; 5) common law unfair competition; and 6) trademark dilution and injury to business reputation in violation of California Business and Professions Code § 14247.  FAC at 7-11.

### A.    Facts Alleged by Plaintiff

Plaintiff has spent substantial time, money, and effort in promoting products under its KERR, REVOLUTION, PREMISE, MAXCEM ELITE, NEXUS, NX3, OPTIBOND, OPTIBOND FL, HERCULITE, HERCULITE XR, PRODIGY, and UNIDOSE marks (collectively, "the Marks").  FAC ¶ 23.  After receiving complaints from dentists concerning the performance and quality of certain products, Plaintiff learned that these nonperforming products were counterfeit –that is, the products were not manufactured by Kerr, but "bore spurious copies" of Kerr's protected trademarks. Pl's Mot. at 1.  Through litigation with (among others) DC Dental Supply, LLC ("DCD"),[1] a counterfeit reseller, and through its own investigative efforts, Kerr identified the source of counterfeit products as Defendant Ahn Luu, a former Kerr employee, and the company he founded, Defendant Tri Dental Inc. *Id.*

Discovery obtained in the DCD Suit and Kerr's own investigation revealed a large counterfeiting scheme. Invoices produced by DCD ("the Invoices") show that DCD purchased over $8 million in counterfeit products –over 300,000 units of 156 products –from TDI. Charnowitz Decl. (Dkt. 36-10) Ex. A-C.  These figures represent sales to only two of Defendants' customers – DCD and an affiliate.  *Id.*   Kerr's independent investigation also revealed that Defendants contracted with Print 5K, a local printer in Fountain Valley, to print hundreds of thousands of unauthorized copies of the instruction booklets (called "Directions for Use" or "DFUs") included in the packaging for Kerr's dental products.  Winn Decl. (Dkt. 36-5). Kerr never authorized TDI to print the DFUs.  Pl's Mot. at 1.

### B.    Plaintiff's Motion for Default

---

1 *See Kerr Corp. v. North American Dental Wholesalers, Inc. North American Dental, Inc., and DC Dental Supply, Inc.*, Case No. SACV11-0313 DOC(CWx), consolidated with SACV11-01300 (C.D. Cal.) (the "DCD Suit").

On June 15, 2012, Plaintiff filed this lawsuit against Defendants to enjoin counterfeiting activities, to protect Kerr's trademarks and the public at large, to compensate Kerr for its injuries, and to punish Defendants for their willful infringement and endangering the public. *See* Compl.  Despite proper service, Defendants have never appeared or responded. On August 23, 2012, Default was entered by the clerk against Defendant Ahn Luu.  Entry of Default (Dkt. 31). On Augst 31, 2012, Default was entered by the clerk against Defendant TDI.  Entry of Default (Dkt. 33).  On February 4, 2013, Plaintiff moved for Default Judgment.  Pl's Mot. (Dkt. 36). Defendants have not responded.  A hearing on this motion was held on March 11, 2013.

In attached declarations and exhibits to the Motion, Plaintiff provided evidence to show the damages and acts that established Defendants' liability.  Included in the declarations and exhibits is the declaration of David Charnowitz, President of DC Dental, Inc., who attached as exhibits a series of Purchase Invoices showing sales of Kerr-marked products sold to DC Dental and Kings Two Dental by Defendants, as well as sales invoices showing DC Dental's sale of Kerr-branded products obtained from Defendants.  Charnowitz Decl.  The declaration of Margaret E. Dayton, Plaintiff's counsel, includes a Summary Chart calculating all revenues established by the Purchase Invoices, and showing that Defendant's sales of Kerr-marked products totaled $8,036,305.00 to purchasers DC Dental and Kings Two Dental.  Dayton Decl. (Dkt. 36-1) Ex. B.  Dayton's declaration also states that Plaintiff has incurred $25,460.00 in attorney's fees in connection with this case, as well as costs of $1,252.50.  *Id.*; Decl. of Alexander H. Cote ¶¶ 2, 7-10.

## II.   Legal Standard

Federal Rule of Civil Procedure 55 provides that the Court may, in its discretion, order default judgment following the entry of default by the Clerk.  Fed. R. Civ. P. 55(b).  Local Rule 55 sets forth procedural requirements that must be satisfied by a party moving for default judgment.  Upon entry of default, the well-pleaded allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages.  *See, e.g.*, *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).  However, "necessary facts not contained

in the pleading, and claims which are legally insufficient, are not established by default."
*Cripps v. Life Ins. Co. of N. Am.,* 980 F.2d 1261, 1267 (9th Cir. 1992).  Where the pleadings are insufficient, the Court may require the moving party to produce evidence in support of the motion for default judgment.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  A court may not enter a default judgment against an unrepresented minor, incompetent person, or person in military service.  Fed. R. Civ. P. 55(b)(2); 50 App. U.S.C. § 520.

When a party applies for default judgment, "the court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."  Fed. R. Civ. P. 55(b)(2).

## III.   Discussion

### A.   The Court's Discretion to Grant Default Judgment

In evaluating whether to enter a default judgment, courts consider seven factors: "(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).   In applying the *Eitel* factors to the facts at issue here, the Court chooses to exercise its discretion in GRANTING Plaintiff's Motion for Default Judgment.

### 1.   The Possibility of Prejudice to Plaintiffs

This factor requires the court to consider the harm to Plaintiffs if a default judgment is not granted.  As described in section I of this Order, Defendants' past misconduct and current failure to litigate this case indicate that it is highly unlikely to correct past misbehavior or otherwise compensate Plaintiffs without a default judgment by the Court.  Without this Court's

intervention, Plaintiff will have suffered millions of dollars worth of harm at the hands of Defendants without any compensation and with no injunctive relief.  Given the likely harm to Plaintiff, the evidence before this Court establishes "that Plaintiff will likely suffer great prejudice through the loss of sales and diminution of goodwill if default is not entered."  *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) (default judgment awarding $2 million in statutory damages in connection with the sale of counterfeit goods).

### 2 & 3.   The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

These two factors require Plaintiff to state a claim on which it can recover.  The Court considers each claim in turn.  Because each is established, and because the Complaint sufficiently stated the Court's jurisdictional grounds, these two factors strongly support the granting of a default judgment.

### i.   Plaintiff's First Three Claims: Federal Trademark Counterfeiting and Infringement (15 U.S.C. § 1114) and Federal Unfair Competition (15 U.S.C. § 1125)

"Although [Sections 32 and 43(a) of the Lanham Act] are distinct claims, the elements are essentially identical and the same evidence establishes both claims." *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1121-22 (C.D. Cal. 2007) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 n.6, 1047 n.8 (9thCir. 1999)). "Liability is established under both Section 32 and Section 43(a) if the plaintiff demonstrates (1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without authorization in a manner likely to cause consumer confusion, deception, or mistake." *Id*. at 1122; *see also* 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(a).

These elements are satisfied here. First, under 15 U.S.C. §§ 1057(b), 1115, Kerr owns valid and protectable trademark rights, as evidenced by its registration of the following marks: KERR, UNIDOSE, OPTIBOND FL, OPTIBOND, PRODIGY, NEXUS, and REVOLUTION (the "Registered Marks"). FAC ¶ 21; Cote Decl., Exs. G-O (registration records of the Registered

Marks). "[R]egistration of a trademark with the United States Patent and Trademark Office satisfies 'the threshold requirement that the plaintiff must possess a protectable mark.'" *See Philip Morris USA, Inc. v. Lee*, 547 F. Supp. 2d 667, 674-75 (W.D. Tex. 2008). With respect to the HERCULITE, PREMISE, NX3, and MAXCEM ELITE marks (the "Unregistered Marks"), Kerr has established ownership if each mark "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [plaintiff's] products by members of the consuming public." *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 823 (9th Cir. 1993). The FAC adequately pleads each of these elements for each of the Registered and Unregistered Marks (the "Marks"). *See* FAC ¶¶ 10-20, 23-24, 35, 40-41, 45, 47, 51.

Second, Defendants used the Marks in commerce in a manner likely to cause consumer confusion, deception, or mistake and without Kerr's authorization. *See* FAC ¶¶ 25-28; Dayton Decl, Ex. B. Defendants used the Marks in commerce. Defendants sold over 300,000 infringing units bearing counterfeit versions of the Marks –and generated over $8 million in revenues. *See* Dayton Decl. ¶¶ 16-24, Ex. B; Charnowitz  Decl, Ex. A.. Defendants also printed the Marks on the invoices for those sales. *See id.*  In addition, Defendants hired a printer to print hundreds of thousands of packaging inserts containing directions for use ("DFUs") of Kerr's products, each bearing one or more Mark. Nguyen Decl. ¶¶ 60-61, Exs. G-K.  Defendants' use of the Marks is likely to cause confusion because counterfeit marks are inherently confusing. *See Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004); *see also Fendi Adele S.R.L. v. Filenes'Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y 2010).

**ii.    Claims Four and Six: Violation of California Unfair Competition and Trademark Dilution and Injury to Business Reputation (Cal. Bus. & Prof. Code §§ 14247, 14252)**

Kerr's state law claims are subject to the same analysis as the federal Lanham Act claims. *Philip Morris USA, Inc. v. Liu*, 489 F. Supp. 2d at 1123 ("Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law"); *Panavision*

*Int'l v. Toeppen*, 141 F.3d 1316, 1324 (9th Cir. 1998).  Because Kerr has established Defendants' liability under the Lanham Act, it has also established Defendants' liability under Cal. Bus. & Prof. Code §§ 17200 and 14247. *See Chanel, Inc. v. Doan*, 2007 U.S. Dist. LEXIS 22691, at *8-9 (granting default judgment because the factual allegations of plaintiff's complaint established violations of the Lanham Act and Cal. Bus. & Prof. Code §§ [14247], 14335, 14340, and 17200 et seq.).

### iii.       Claim Five: Common-Law Unfair Competition

"To prevail on its common law unfair competition claim, Plaintiff must prove that Defendant tried to pass off false goods as those of Plaintiff, or as somehow related or associated with, or sponsored or endorsed by Plaintiff." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 500 (citing *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1263 (1992)).  As discussed above, Defendants manufactured and sold dental supplies and materials bearing counterfeits of the Marks and directed a printer to reproduce counterfeit DFUs. *See* FAC ¶¶ 25-29; Nguyen Decl. ¶¶ 21-31, 60-61. These allegations establish Kerr's common-law unfair competition claim. *See Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. at 500 (citation omitted).

### 4.       The Sum of Money at Stake

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Cal. Sec. Cans.*, 238 F.Supp.2d at 1176; *see also Eitel*, 782 F.2d at 1471–72. Under 15 U.S.C. § 1117(a), a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*  Plaintiff has shown that Defendants sold products worth at least $8,036,305 under Plaintiff's counterfeited mark. Further, 15 U.S.C. § 1117(a) mandates treble damages in the case of intentional counterfeiting. Here, Plaintiff has shown that Defendants intentionally copied and reproduced Plaintiffs marks, along with supplemental materials, in order to sell counterfeit goods.  Therefore, Plaintiff is

entitled to recover $24,108,915 in damages.

Given Defendant's infringing sale of large, commercial quantities of counterfeit Kerr products, the likelihood that its conduct would cause confusion or mistake or otherwise deceive customers, and its failure to comply with the judicial process or to participate in any way in the present litigation, the Defendants have "engaged in willful use of the counterfeit mark, which justifies the imposition of a substantial monetary award. Accordingly, this factor favors granting default judgment." *Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

### 5 & 6.   The Possibility of a Dispute Concerning Material Facts and Whether the Default Was Due to Excusable Neglect

These two factors require the Court to consider whether it is highly likely that there would be a dispute as to material facts and whether Defendant's failure to litigate is the result of excusable neglect. The facts of this case indicate that the answer is "no." Defendant could not likely dispute material facts regarding the sale of counterfeit goods because Plaintiff has shown substantial sales based on actual invoices and sales records provided by those who purchased products directly from Defendants. Defendants' failure to litigate is not excusable given that Defendants received sufficient notice and yet failed to answer. Thus, these factors strongly support the granting of a default judgment.

### 7.  The Public Policy Favoring Decisions on the Merits

This factor indicates that, for public policy reasons, courts prefer to rule on the merits. However, since every other *Eitel* factor militates in favor of default judgment, the Court chooses to exercise its discretion in GRANTING Plaintiff's motion for default judgment.

### C.   Damages

#### 1.   Defendants' Trebled Profits

Kerr has established Defendants' intentional and knowing violations of the Lanham Act. Under 15 U.S.C. § 1117(a), a plaintiff may recover "(1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "In assessing profits,

the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *Id.*

In connection with the settlement of the DCD suit, Kerr received copies of the Invoices, which reflect DCD's and Kings Two Dental Supply's purchase of the counterfeit products from Defendants. *See* Charnowitz Decl. ¶¶ 3-6, Ex. A.. From the Invoices, Kerr prepared a Summary Chart. Dayton Decl. ¶ 18, Ex. B.. Every line on the Summary Chart represents an individual sale of product containing a counterfeit of the KERR Mark. *Id.* ¶ 20; Khalili Decl. ¶ 2. Pulled directly from the Invoices, each entry includes: the invoice number, the invoice date, the product code, the product description, the quantity purchased, and the price charged by TDI. Dayton Decl. ¶ 20, Ex. B ("Invoice Number," "Date," "Product Code," "Product Description," "Quantity," and "TDI Price" columns).

From this data, Plaintiff multiplied the quantity of product sold times the price charged by TDI as reflected on the Invoices to generate Defendants' total for each sale. *Id.* at ¶ 22. To calculate Defendants' total revenue for sales to DCD and Kings, Kerr added the "TDI Sales" column for all of the entries. *Id.* at ¶ 23. Based on these calculations, TDI's total revenue for sales of Kerr products to DCD and Kings equals $8,036,305.00. *Id.* Ex. B ("TDI Sales" column). Because Defendants have presented no evidence of costs or deductions, Kerr is entitled to an accounting of the full amount of TDI's gross revenues. *See* 15 U.S.C. § 1117(a); *see also Cosmos Jewelry Ltd. v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072, 1088 (C.D. Cal. 2007) (ordering accounting of entirety of defendants' gross revenues in light of failure to offer proof of deductions), *aff'd without op.*, No. 06-56338 (9th Cir. Mar. 24, 2009).

Once calculated, monetary relief under 15 U.S.C. § 1117(a) "shall, unless the court finds extenuating circumstances," be trebled when (1) the defendant intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use was likely to cause confusion or deceive. 15 U.S.C. § 1117(b); *see also Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

15 U.S.C. § 1117(b) mandates the trebling of monetary relief because Defendants intentionally used counterfeit Marks in connection with the sale, offering for sale, or distribution of goods in a way that was likely to cause consumer confusion and because Defendants have failed to carry their burden of demonstrating extenuating circumstances. Accordingly, Kerr is entitled to $24,108,915.00, which is three times Defendants' known revenues. Dayton Decl. ¶¶ 23, 25.

### 2.      Injunctive Relief

The Lanham Act authorizes a district court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988). Accordingly, injunctions may be granted in connection with a default judgment. *See, e.g., PepsiCo.*, 238 F. Supp. 2d at 1177; *Chanel, Inc. v. US880*, 2011 U.S. Dist. LEXIS 82632, at *29-40.

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. *eBay,Inc. v. MercExchange, LLC*, 547 U.S. 388, 391-92 (2006).

Defendants' actions warrant permanent injunctive relief. Defendants used marks identical to those owned by Kerr to advertise, promote and sell the same kinds of goods that Kerr sells. *See* FAC ¶¶ 9-52.  One effect of Defendants' actions is a risk to public health and the confusion of consumers who believe that Defendants' counterfeit goods are genuine goods originating from Kerr. *See Super-Krete Int'l, Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1037 (C.D. Cal. 2010) (finding irreparable harm based in part on threat of diverted customers). This unlawful conduct has caused injury to Kerr's good will and reputation and will continue to do so if Defendants are not permanently enjoined. *See Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D.

Cal. 2011) (finding irreparable harm based in part on plaintiff's loss of control over its reputation); *U.S. Olympic Comm. Exclusive Leisure & Hospitality Ltd*., 89 U.S.P.Q.2d 2011, at *23 (N.D. Cal. 2009) (entering injunctive relief when "it is reasonable for the court to assume that continuing infringement will leave the plaintiff with a loss of control over its reputation and a loss of goodwill").

The public has an interest in the issuance of a permanent injunction against Defendants in order to prevent a risk to public health. Plaintiff sells dental materials and dental instruments that are regulated by the FDA. Kerr takes numerous steps to ensure regulatory compliance and consumer safety. *See* Khalili Decl. ¶ 4. By distributing dental materials and dental instruments that are falsely labeled with Kerr Marks, Defendants may be evading FDA oversight and putting the public at risk.

Accordingly, Plaintiff is entitled to an injunction prohibiting Defendants from further infringing on Plaintiff's products and requiring Defendants to recall all products it has distributed bearing or associated with the Marks and not manufactured under Kerr's authority. *See PepsiCo*., 238 F. Supp. 2d at 1178 (granting injunctive relief prohibiting future infringement); *Philip Morris USA Inc. v. Castworld Prods., Inc*., 219 F.R.D. at 502 (same); *Sennheiser Electronic Corp. v. Bielski*, No. CV11-07892-ODW (FFMx), 2012 U.S. Dist. LEXIS 77985, at *11-12 (C.D. Cal.June 4, 2012) (granting default judgment and injunction ordering recall of infringing merchandise); *see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH &Co*., 571 F.3d 873, 879 (9th Cir. 2009) (considering the "substantial risk of danger to the public due to defendant's infringing activity" on motion for preliminary injunction).

Also, because Kerr has established that Defendants violated 15 U.S.C. § 1125, Defendants are ordered to deliver up for destruction all counterfeit goods that bear Kerr's Marks, or colorable imitations thereof, that are in Defendants' possession, custody, or control pursuant to 15 U.S.C. § 1118. 15 U.S.C. § 1118; *BMW of N. Am. v. Dinodirect Corp*., No.C 11-04598, 2012 U.S. Dist. LEXIS 89271, at *27-28 (N.D. Cal. June 27, 2012). This includes any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements in their possession, custody, or

control that bear Kerr's Marks or colorable imitations thereof. *Id.*

The court ORDERS the following injunctive relief:

(1) Defendant Ahn Luu and Defendant Tri Dental Inc. (collectively, "Defendants") and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, are prohibited from:

    i. using any copy, reproduction, or colorable imitation or simulation of the KERR, HERCULITE, UNIDOSE, OPTIBOND, REVOLUTION, PRODIGY, OPTIBOND FL, NEXUS, PREMISE, NX3, MAXCEM ELITE, and/or HERCULITE XR trademarks, or any other marks owned by Kerr Corporation or its affiliated companies (collectively, "Marks") in connection with goods not manufactured under Plaintiff's authority;

    ii. using any mark that is a copy, reproduction, colorable imitation, or simulation of or, confusingly similar to the Marks, or is likely to cause confusion, mistake, deception, or public misunderstanding that Defendants' products are products of Plaintiff, or are sponsored by or in any way related to Plaintiff; and

    iii. passing off, palming off, or assisting in passing off or palming off Defendants' products as those of Plaintiff, or otherwise continuing any and all acts of unfair competition.

(2) In light of the public health risk, Defendants shall recall any products it has distributed bearing or associated with the Marks and not manufactured under Kerr's authority; and

(3) Defendants shall deliver up for destruction all counterfeit goods and any

and all labels, signs, prints, packages, wrappers, receptacles, and advertisements that bear Kerr's marks or colorable imitation thereof, pursuant to 15 U.S.C. § 1118.

### 3. Mandatory Attorney's Fees and Costs

Plaintiff is entitled to reasonable attorneys fees under 15 U.S.C. § 1117(b). Section 1117(b) provides that when a defendant "intentionally us[es] a mark or designation, knowing that such mark or designation is a counterfeit mark . . ." the court shall award reasonable attorney's fees. 15 U.S.C. § 1117(b); *Chanel, Inc. v. Doan*, 2007 U.S. Dist. LEXIS at \*16-18. 15 U.S.C. § 1117(b) applies to Defendants' intentional and willful counterfeiting of Plaintiff's Mark.

While Plaintiff proposes that an attorney's fees award of $485,778.30 could be granted pursuant to the Court's default judgment fee schedule, *see* Local Rule 55-3, Plaintiff, perhaps recognizing that this Court is not inclined to grant an attorney's fees award that so vastly exceeds the amount of fees actually incurred, alternatively requests $25,460, which represents the amount that Plaintiff has incurred in prosecuting this action. Cote Decl. ¶¶ 2, 7-10, Ex. F.

Plaintiffs also seek $1252.00 in costs, which includes $350 in filing fees, $165 in connection with filing its FAC, $142 for service of the FAC, and $595 for the preparation of its Summary Chart of damages. Dayton Decl. ¶ 28, Ex. Q. These costs are reasonable.

Because Plaintiffs' fees and costs are reasonable, Plaintiffs' request for $25,460 in attorney's fees and $1252 in costs is GRANTED.

### IV. Disposition

For the foregoing reasons, Plaintiff's Motion for a Default Judgment is GRANTED. The Court hereby:

1. GRANTS Plaintiff's Motion for an entry of Default Judgment as to all claims against Defendants.

2. GRANTS Plaintiffs' request for the following damages:

    A.   $24,108,915 in damages pursuant to 15 U.S.C. § 1117(b);

B.   $25,460 in reasonable attorney's fees;

D.   $1252 in costs.

3. GRANTS Plaintiff's request for a Permanent Injunction as described in section III(C)(2) of this Order.

IT IS SO ORDERED.

DATED: March 11, 2013

_David O. Carter_

DAVID O. CARTER
United States District Judge